**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:20-CR-278-SDJ- |
| | § | CAN-1 |
| ROBERT LEON FRANKLIN, III (1) | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Robert Leon Franklin, III's Motion to Suppress Evidence [Dkt. 58]. On September 26, 2022, an evidentiary hearing ("Hearing") was held on the pending Motion, and the undersigned heard oral argument from both the Government and Defendant. After considering the Motion, all relevant filings and evidence, as well as the oral argument of counsel at Hearing, the Court recommends that Defendant's Motion to Suppress [Dkt. 58] be **DENIED**.

**BACKGROUND**

On April 13, 2022, Defendant was charged by First Superseding Indictment in three counts [Dkt. 45]. Count One charges a violation of 21 U.S.C. § 841(a)(1), Possession with the Intent to Distribute or Dispense Cocaine; Count Two charges a violation of 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Count Three charges a violation of 18 U.S.C. § 922(g)(1), Possession of Ammunition by a Prohibited Person. Each of these charges stem from a traffic stop of Defendant conducted on February 22, 2019.

*The Traffic Stop*

On or about February 22, 2019, Cooke County Police Officer Bart Smith ("Officer Smith") initiated a traffic stop of Defendant for driving without a front license plate. Defendant pulled his

vehicle, a white BMW sedan, to the side of the highway.  Officer Smith then approached the vehicle from the driver's side [Gov. Exhibit 1 at 00:20].  As Officer Smith approached, Defendant stuck his arms and upper body out of the driver's side window and advised Officer Smith a firearm was present in the vehicle's backseat [Gov. Exhibit 1 at 00:20].  Defendant also advised Officer Smith that he did not have a driver's license and was, in fact, on probation for driving without a license [Gov. Exhibit 1 at 01:00].  Officer Smith requested identification, which Defendant voluntarily provided [Gov. Exhibit 1 at 01:04].  Officer Smith inquired as to the owner of the gun; Defendant admitted the gun was his [Gov. Exhibit 1 at 01:20-01:21].  Officer Smith requested permission to retrieve the firearm from the backseat and Defendant him allowed him to do so [Gov. Exhibit 1 at 01:25-01:44].  Officer Smith then returned to his patrol car to run a check on the gun and Defendant [Gov. Exhibit 1 at 01:46].

Officer Smith reapproached Defendant's vehicle on the passenger side [Gov. Exhibit 1 at 07:18].  Officer Smith asked Defendant to exit the vehicle; Defendant complied [Gov. Exhibit 1 at 07:27-07:35].  Upon exiting the vehicle, Defendant opened the trunk of the vehicle and joined Officer Smith there [Gov. Exhibit 1 at 07:45].  Officer Smith asked Defendant if he had any guns on his person; Defendant replied in the negative [Gov. Exhibit 1 at 07:49].  Officer Smith proceeded to perform a pat-down search on Defendant [Gov. Exhibit 1 at 07:52].  Officer Smith and Defendant continued to discuss the reason for the stop and Defendant's criminal history [Gov. Exhibit 1 at 08:00-09:20].  The following exchange occurs:[1]

| Officer: | Do you have a felony on your record at all? |
|----------|---------------------------------------------|
| Defendant: | Nothing. |
| Officer: | So you can have that gun? |
| Defendant: | Yes. Oh no, I'm not a felon at all. |

---

[1] No official transcript of the body camera footage proffered by the Government at Hearing was provided to the Court. The portions of the video transcribed here are the Court's recitation of relevant portions of the bodycam videos that were admitted into evidence with no objection at Hearing [*See* Dkt. 71 at 3-4].

| Officer: | Here is what I am going to tell you. If you don't have a felony on your record, which is going to hit you with this gun, I am going to write you a citation for your license being bad but I'm not going to take you to jail. |
| Defendant: | Okay, no I don't have a felony. |
| Officer: | That way you still have to answer for it but you don't have to go to jail for it. |
| Defendant: | That is going to violate my probation. |
| Officer: | I mean, what do you expect, what do you expect me to do? |
| Defendant: | I mean, just, it's just for the license plates, I wasn't speeding, I wasn't doing anything bad, I'm just trying to take my car home. You won't see me in this car, you won't see me on this highway again. [Defendant continues to try and persuade Officer Burr not to write him a ticket] |
| Officer: | You ever do any kind of drugs, man? |
| Defendant: | No, sir. |
| Officer: | Weed? Anything? |
| Defendant: | No. I don't smoke any weed. |
| Officer: | You don't mind if I search your car? |
| Defendant: | There is no drugs in my car |
| Officer: | You mind if I search your car? |
| Defendant: | It is my wife's car |
| Officer: | Yes or no? |
| Defendant: | Go right ahead. |
| Officer: | Can I search? |
| Defendant: | Go right ahead. |
| Officer: | Alright, just hang out. I'm going to make sure there are no drugs in your car. As long as you're good I'll work with ya. Okay. I am not here to ruin your life over no license. If there is something though you just need to tell me. You're acting like you're upset. |
| *Defendant inaudible* | |
| Defendant: | I want to just say give me the ticket. But. I know. |
| Officer: | So do you got something in your car? |
| Defendant: | No, sir. I just have that gun in my car. |
| Officer: | Is there anything in your pockets? |
| Defendant: | No sir. There is nothing on me. |
| Officer: | Do you mind if I check your pockets? |
| Defendant: | Go right ahead |
| *Officer Smith checks Defendant's pockets* | |

[Gov. Exhibit 1 at 09:23-11:45]. After this conversation, Officer Smith asked Defendant to stand by his patrol car and proceeded to search Defendant's vehicle [Gov. Exhibit 1 at 12:30]. Officer Smith is advised over the radio that Defendant has prior felony arrests [Gov. Exhibit at 14:00].

Officer Smith approached Defendant and detained him, placing him in handcuffs [Gov. Exhibit at 14:45, 16:56-17:55]. Cooke County Sheriff's Office Lieutenant Christopher Burr ("Officer Burr") arrived at the scene [Gov. Exhibit 1 at 18:25]. Defendant was placed under arrest for a class B misdemeanor, driving without a license [Gov. Exhibit 1 at 25:41]. Defendant was placed in Officer Smith's patrol car and transported to the jail.

### The "Inventory" Search

After Officer Smith departed the scene with Defendant, Officer Burr completed a further search of the vehicle [Gov. Exhibit 2]. During the search, Officer Burr was accompanied by a man from the company that would tow the truck back to station. Throughout the bodycam footage, the two men are making conversation [Gov. Exhibit 2]. Around four minutes into the footage, Officer Burr begins to search the already opened trunk [Gov. Exhibit 2]. Specifically, Officer Burr lifted the floor mat and opened the side compartments [Gov. Exhibit 2 at 04:45-05:30]. Next, Officer Burr moved an after-market speaker box located in the trunk [Gov. Exhibit 2 at 05:40]. He moved the speaker box by pushing it out of the way—he did not lift it, and he did not attempt to open it. He observed a Crown Royal bag behind the speaker box and retrieved it [Gov. Exhibit 2 at 05:45]. Upon opening the bag, he observed a substance believed to be cocaine, as well as scales [Gov. Exhibit. 2 at 06:00-06:35].

### The Motion to Suppress

On August 25, 2022, Defendant filed the instant Motion to Suppress, seeking suppression of "unlawfully obtained evidence seized from Defendant's motor vehicle on or about February 22, 2019" [Dkt. 58 at 1]. Defendant's Motion argues that the evidence obtained during the searches of his vehicle must be suppressed on numerous grounds, including that (1) the plain view doctrine does not apply, (2) search incident to arrest does not apply, (3) the inventory search exception does

not apply, and (4) the automobile exception is inapplicable [Dkt. 58]. Defendant summarizes, "[s]aid search was not the result of a valid consent by the Defendant. Further, the scope of said search exceeded that authorized by any consent given, by authority to search incident to arrest or by any search pursuant to inventory" [Dkt. 58 at 3]. The Government filed its Response to Defendant's Motion to Suppress on September 14, 2022 [Dkt. 64]. The Government urges that the Motion must be denied [Dkt. 64 at 1].

An evidentiary hearing on the Motion to Suppress was held on September 26, 2022 [Dkt. 68]. At Hearing, the Parties agreed Defendant was the owner of the vehicle, a traffic stop was initiated, and Defendant was ultimately arrested for driving while license invalid [Dkt. 71 at 6]. The Government further confirmed it did not advance three of the warrantless search exceptions referenced by Defendant, specifically the plain view doctrine, search incident to arrest, or automobile exception. Accordingly, the Parties concurred the issues presented for consideration were the validity of consent (and the scope thereof) and the inventory search exception [Dkt. 71 at 4-7]. At the conclusion of the Hearing, the Court found consent was given and not revoked [Dkt. 71 at 39]. The Court directed the Parties to file supplemental briefing regarding the scope of consent [Dkt. 71 at 39]. The Parties' supplemental briefing was filed on October 3, 2022 [Dkts. 69; 70], and the official Hearing transcript was docketed on October 14, 2022 [Dkt. 71].

## ANALYSIS

To reiterate, Defendant moves to suppress all evidence obtained from the search of his vehicle on February 22, 2019. Defendant urges the Court to find the search of his vehicle was not the result of a valid consent, or that the scope of any consent was exceeded, and that the inventory search was unlawful.

***Fourth Amendment Protections Against Warrantless Searches***

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. "[T]he fundamental inquiry under the Fourth Amendment is whether a search was reasonable." *United States v. Barber*, -- F.Supp. 3d. --, 2022 WL 2841481, at *2 (E.D. Tex. July 20, 2022) (citing *United States v. Knights*, 534 U.S. 112, 118 (2001)). Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see United States v. Garcia*, 604 F.3d 186, 190 (5th Cir. 2010) (recognizing consent as an exception to the warrant requirement); *United States v. Motton*, 452 F. App'x 502, 504 (5th Cir. 2011) (per curiam) (citing *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979)) (recognizing inventory searches as an exception to the warrant requirement). "When a person is subjected to a warrantless search, the government has the burden of proving that the search was justified." *United States v. Silva*, 865 F.3d 238, 241 (5th Cir. 2017); *see United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) ("When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional."). "The exclusionary rule operates to suppress evidence obtained in violation of the Fourth Amendment." *Barber*, 2022 WL 2841481, at *2 (citing *Davis v. United States*, 564 U.S. 229, 231 (2011)).

***The Inventory Search Was Lawful***

It is uncontested that Defendant was arrested for driving without a license and that the vehicle was subsequently towed and impounded. The Government urges that "[l]aw enforcement may perform reasonable inventory searches of vehicles that are to be impounded if the search is

conducted pursuant to standardized procedure" [Dkt. 64 at 5]. "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *United States v. Sanders*, No. 4:20-CR-32, 2022 WL 411165, at *6 (E.D. Tex. Feb. 9, 2022) (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). "Inventory searches 'may be lawfully conducted while the vehicle is … awaiting towing.'" *Id.* (quoting *United States v. Duarte*, 52 F.3d 1067, 1995 WL 241789, at *2 (5th Cir. 1995)). According to the Fifth Circuit,

> [a]n inventory search 'is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or dispute over lost or stolen property, and (3) protecting the police from danger.'

*United States v. Grice*, No. EP-21-CR-1743-DB, 2022 WL 1176721, at *5 (W.D. Tex. Apr. 20, 2022) (quoting *United States v. Shaw*, 578 F. App'x 363, 365-66 (5th Cir. 2014)); *see United States v. Gibson*, No. 6:21-cr-00049, 2022 WL 1105747, at *5 (E.D. Tex. Apr. 13, 2022) (quoting *United States v. McKinnon*, 681 F.3d 203, 209-10 (5th Cir. 2012)) ("Inventory searches must be conducted according to standardized regulations and procedures to 'sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches.'"). "Regulations and procedures also prevent the search from becoming 'a ruse for general rummaging … to discover incriminating evidence.'" *Gibson*, 2022 WL 1105747, at *5 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). "Officers can be given latitude to determine if a closed container should be opened or not based on the characteristics of the container and the nature of the search but must still be subject to standardized criteria." *Id.* (citing *Wells*, 495 U.S. at 4).

The Cooke County Sheriff's Office maintains the following policy on inventory searches:

<u>POLICY</u>
The intent of this procedure is to establish guidelines for the towing and inventory of impounded vehicles.

….

INCIDENT TO ARREST

When a driver of a vehicle has been arrested, the Deputy has options in deciding what action to take concerning the vehicle.  The Deputy may:

1) Allow the driver to drive the vehicle to the Cooke County Sheriff's Office if the driver can immediately post bond for a Class C misdemeanor offense and the driver will not be a danger to himself or others.

2) Allow a third party to take custody of the vehicle at the owner's or operator's request.

3) Impound the vehicle and inventory the contents if the previous two options have been explored.  Under no circumstances should an inventory be used to search a vehicle.

….

INVENTORY PROCEDURES

A) Inventory searches are conducted in order to locate and identify items in a vehicle. The search is completed in order to

    l) Protect the owner's property.

    2) Protect the Sheriff Deputy, the Department and the wrecker service from subsequent claims of loss or of stolen property.

    3) Protect the Sheriff Deputy, the Department and the wrecker service from dangerous instrumentalities such as weapons or explosives.

    4) Inventories of vehicles will not be conducted for the purpose of discovering evidence.

B) All vehicles impounded will have their contents inventoried. Inventories will also be completed on vehicles involved in accidents where the driver or person responsible for the vehicle is incapacitated and the vehicle is towed at the Deputy's request.

    1) A detailed list of all contents will be recorded on the Vehicle Impoundment Record.

    2) Inventory search of the intended impounded vehicle should be made at a safe location. If the present site creates a hazard, the vehicle may be driven or towed to a safe location before conducting the inventory.

    3) Except in those cases where a search is conducted incidental to a lawful arrest, the examination of a vehicle for the purpose of inventorying personal property should be limited to places where a person would ordinarily store or leave items of personal property.

    4) Locked vehicle trunks, locked dash or console boxes and locked containers will not be opened by force except in exigent or emergency circumstances or with a warrant.

    5) Unlocked closed containers will be opened and their contents inventoried if the deputy cannot see the contents without opening the container.

a) The container by its size, markings, location or other reasons reasonable indicates that it might contain items of value.
b) The container by its size, markings, location or other reasons reasonably indicated that it might contain items that may spoil or be damaged without further actions.

[Dkt. 64-1 at 2-3].

The search of the vehicle by Officer Burr was conducted prior to towing, as permitted by the written procedures. It is further undisputed that at the time of the search by Officer Burr, the trunk of the vehicle was unlocked and open. The Parties thus primarily disagree as to whether Officer Burr: (1) acted within the policy when he moved the speaker box to discover the Crown Royal bag containing narcotics, and (2) improperly used the inventory process as a ruse to look for incriminating evidence.

Cooke County's standard operating procedure permits examination of "places where a person would ordinarily store and leave items of personal property" [Dkt. 64-1 at 3]. At Hearing, Officer Burr testified that he had conducted multiple inventory searches as a law enforcement officer, well over a hundred (100), that it was regular or "normal practice" to inventory the trunk of a vehicle, that he had encountered similar speaker boxes on "numerous occasions"; and that he "always move[s] them" during inventories [Dkt. 71 at 21, 28-30]. Defendant contends that Officer Burr exceeded the bounds of the inventory policy when he "deliberately picked up a speaker box with the express purpose of searching the cavity underneath for contraband" [Dkt. 70 at 4].[2] The Court rejects Defendant's argument. Officer Burr testified that the speaker box was not affixed to

---

[2] Defendant contends that Officer Burr "pull[ed] apart the speaker" [Dkt. 58 at 6], and that the Crown Royal bag was hidden "underneath" the speaker [Dkt. 70 at 3]. To the contrary, Officer Burr's bodycam footage depicts him simply pushing the speaker box to find the Crown Royal bag behind it—he did not lift or open the speaker box but merely pushed it aside. Next, he opened the Crown Royal bag, which he simply untied, because it was not transparent and he could not see inside—again, complying with the procedure. Without pointing the Court to any relevant case law, Defendant contends that this constitutes "rummaging" [Dkt. 70 at 3]. However, as the policy states, Officer Burr was required to make "[a] detailed list of all contents" in the vehicle, and he therefore moved the speaker box – an unattached object – to make sure he had accounted for everything in the vehicle, consistent with the policy.

the trunk in any manner and was easily moveable, that the presence of the speaker box meant the trunk was not "empty," and that from prior experience, he was aware that "[y]ou can place a large amount of cash or anything behind a speaker box" [Dkt. 71 at 26].  He further explained that the purpose of moving the box was to inventory "valuable items," as "that's the idea of an inventory" [Dkt. 71 at 27].  Officer Burr did not exceed the limits of the policy by searching the trunk of the vehicle for valuable contents inside so they could be inventoried.  *See United States v. Zelinger*, No. CRIM. 6:14-86, 2015 WL 4256463, at *2 (S.D. Tex. July 14, 2015) (citing *United States v. Edwards*, 577 F.2d 883, 894 (5th Cir. 1978) (en banc)) ("Law enforcement officers may inspect a car's trunk when conducting inventory searches because personal property is commonly kept there.").  The record demonstrates that Officer Burr complied with the Cooke County Sheriff's Office inventory procedures and the Court finds his testimony credible.  Defendant's first argument as to the validity of the inventory search is without merit.  *See United States v. Foots*, 340 F. App'x 969, 973 (5th Cir. 2009).

The Court makes a similar finding as to Officer Burr's intent during the search.  Defendant contends that Officer Burr's comments to the tow truck driver during the search indicate he was looking for incriminating evidence rather than merely inventorying contents of the vehicle.  More specifically, Defendant points to Officer Burr's remark, "there it is," when he found the narcotics in the Crown Royal bag in the trunk of the vehicle.  At Hearing, Officer Burr addressed this statement, explaining it "was just an awkward statement," as the tow truck driver was standing beside him and they had been engaging in conversation, and "[w]hen I said there it is, it was cocaine, yes, sir" [Dkt. 71 at 27-28].  There are no express statements by Officer Burr that he was searching for incriminating evidence, and Defendant does not point the Court to such statements.[3]

---

[3] Defendant does not point the Court to when Officer Burr made any other statement besides, "there it is."

Officer Burr at Hearing testified his intent was to complete an inventory of the vehicle. *See United States v. Salazar*, 275 F.3d 1079 (5th Cir. 2001) (citation omitted) ("The facts in this case do not support an accusation that the inventory search was merely a ruse to justify an investigatory search. Officer Nogle testified at the suppression hearing that he looked for evidence as well as for objects of value while performing the inventory search.").

Moreover, Officer Burr's subjective motives do not render the search unconstitutional. A similar argument was advanced by the defendant in *Gibson*, a recent case in the Eastern District, which fell flat. United States District Judge Barker concluded the following:

> ***The officers' subjective suspicions or motives do not make the valid inventory search unconstitutional.*** "It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers. [S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (internal citations omitted). "[I]f an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir. 1979). Here, the troopers conducted a lawful inventory search and did not go beyond the procedures and regulations. ***Whatever hidden suspicions or motives the troopers had that defendant might have drugs, as expressed during the stop, is irrelevant and does not make the troopers' lawful inventory search unlawful***.

*Gibson*, 2022 WL 1105747, at *6 (emphasis added). The facts and allegations here are like those considered by the *Gibson* court. Officer Burr's subjective motive is irrelevant and does not make the inventory search unlawful. *See United States v. Gray*, No. 5:19-CR-2-RWS-CMC, 2019 WL 2166545, at *12 (E.D. Tex. Apr. 24, 2019) (quoting *McKinnon*, 681 F.3d at 209-10) ("The Fifth Circuit found the impound was reasonable given the department's impound policy and held the officer's subjective motive did not negate the search's constitutionality."), *report and recommendation adopted*, No. 5:19-CR-00002-RWS, 2019 WL 2161694 (E.D. Tex. May 17, 2019), *aff'd*, 824 F. App'x 258 (5th Cir. 2020). In sum, Officer Burr's statements and/or subjective

motives have no bearing on the constitutionality of the search; even if he had some subjective investigatory intent (which the Court does not find), the inventory search would remain valid, as law enforcement did no more than they were objectively authorized and legally permitted to do. *See Salazar*, 275 F.3d 1079 (quoting *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980)) ("Salazar's argument, that any investigatory purpose automatically invalidates an inventory search, is not supported by the case law. '[I]f an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found.'"). The Court concludes the narcotics were seized pursuant to a valid inventory search conducted in compliance with the Cooke County inventory procedures. Defendant's Motion to Suppress should be denied.[4]

### *Defendant's Consent to Search Was Valid*

At the conclusion of the Hearing, the Court found "[i]t's clear consent was given and not revoked, however, what is unclear to me is [] scope of consent" [Dkt. 71 at 39]. The Court herein briefly summarizes the bases for its consent finding. A well-established exception to the warrant requirement for searches is consent. *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). To determine whether consent to search is valid, the Fifth Circuit uses a two-pronged inquiry that examines: "(1) whether the consent was voluntarily and freely given; and (2) whether the consent was an independent act of free will." *United States v. Macias*, 658 F.3d 509, 522-23 (5th Cir. 2011) (citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)); *see Barber*, 2022 WL 2841481, at *6 ("[C]onsent must be voluntarily given and not the product of coercion, express and implied, or duress."). "The first prong focuses on coercion, the second on causal connection with the constitutional violation." *Macias*, 658 F.3d at 523 (quoting *United States v. Chavez–*

---

[4] Notwithstanding this finding, the Court proceeds to also address the validity and scope of consent.

*Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993)).  To determine whether consent is voluntary, the Court considers six factors: "(1) the voluntariness of the suspect's custodial status; (2) the presence of coercive police procedures; (3) the nature and extent of the suspect's cooperation; (4) the suspect's awareness of his right to refuse consent; (5) the suspect's education and intelligence; and (6) the suspect's belief that no incriminating evidence will be found."  *United States v. Escamilla*, 852 F.3d 474, 483 (5th Cir. 2017) (citing *Macias*, 658 F.3d at 523).  "While all six factors are relevant, no single factor is dispositive."  *Barber*, 2022 WL 2841481, at *6 (citing *Tompkins*, 130 F.3d at 121).  "Consent may be 'limited, qualified, or withdrawn' by the person who originally consented." *United States v. Esquivel Carrizales*, No. H-20-00161, 2020 WL 6392420, at *15 (S.D. Tex. Nov. 2, 2020) (quoting *Mason v. Pulliam*, 557 F.2d 426, 428 (5th Cir. 1977)).

Defendant does not truly address any of the six voluntariness factors.  Rather, the heart of Defendant's argument is couched in terms of scope, addressed *infra*, that he consented to the search of his vehicle as the result of a negotiation between himself and Officer Smith over whether he would receive a citation or be arrested for the traffic violation, and once Officer Smith reneged on his side of the negotiation, the search exceeded the consent given [Dkt. 58 at 1] ("Deputy Smith told Defendant repeatedly while roadside that he was going to write Defendant a citation for driving without a valid license rather than arrest him for the offense IF the defendant would consent to a search of the vehicle. The Defendant agreed that he would let the Deputy search the vehicle if the Deputy would in fact not arrest the Defendant for Driving while License Invalid."). Notwithstanding, and out of an abundance of caution, the Court briefly considers each of the six voluntariness factors.[5]

---

[5] "Absent a Fourth Amendment violation [that he was illegally detained], Defendant's consent to search was not unconstitutionally tainted, so the Court does not need to consider his argument that his consent was not an independent act of free will."  *See United States v. Pickett*, No. 3:20-CR-435-E, 2021 WL 4067486, at *17 n.5 (N.D. Tex. Aug. 19, 2021), *report and recommendation adopted*, No. 3:20-CR-435-E, 2021 WL 4060451 (N.D. Tex. Sept. 7, 2021).

### *Presence of Coercive Police Procedures*

"When considering the second factor—coercive police procedures—a court should consider whether the officer 'used threats or intimidation to obtain … consent or that an independent constitutional defect preceded or accompanied' the request for consent." *United States v. Salemi-Nicoloso*, 353 F. Supp. 527, 538 (N.D. Miss. 2018) (quoting *United States v. Perales*, 886 F.3d 542, 547 (5th Cir. 2018)). Trickery or deceit when used to compel consent may constitute "coercive police procedures." *United States v. Soriano*, 976 F.3d 450, 456 (5th Cir. 2020) (finding untruthful statements made by an officer is not coercive unless used to "pressure [defendant] to consent to the search"); *see also United States v. Ramirez*, EP-18-CR-3530, 2019 WL 3502913, at *9 (W.D. Tex. Aug. 1, 2019) (quoting *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998)) ("So long as the agent's statement is not pretextual, 'it is well-settled that an agent's statements to the effect that he would obtain a warrant if the defendant did not consent to search does not taint the defendant's consent to a search.'") (cleaned up). Defendant argues that he was coerced into providing his consent because "[t]he conversation between the Defendant and Deputy Smith is clearly one of negotiation" [Dkt. 70 at 1]. Though adamant that Officer Smith "bargained" for Defendant's consent to search the vehicle, there is nothing in the record to support this conclusion. Consider again the following conversation:

| | |
|---|---|
| Officer: | Do you have a felony on your record at all? |
| Defendant: | Nothing. |
| Officer: | So you can have that gun? |
| Defendant: | Yes. Oh no, I'm not a felon at all. |
| Officer: | Here is what I am going to tell you. If you don't have a felony on your record, which is going to hit you with this gun, I am going to write you a citation for your license being bad but I'm not going to take you to jail. |
| Defendant: | Okay, no I don't have a felony. |
| Officer: | That way you still have to answer for it but you don't have to go to jail for it. |
| Defendant: | That is going to violate my probation. |

| Officer: | I mean, what do you expect, what do you expect me to do? |
| Defendant: | I mean, just, it's just for the license plates, I wasn't speeding, I wasn't doing anything bad, I'm just trying to take my car home. You won't see me in this car, you won't see me on this highway again. [Defendant continues to try and persuade Officer Burr not to write him a ticket] |
| Officer: | You ever do any kind of drugs, man? |
| Defendant: | No, sir. |
| Officer: | Weed? Anything? |
| Defendant: | No. I don't smoke any weed. |
| Officer: | You don't mind if I search your car? |
| Defendant: | There is no drugs in my car |
| Officer: | You mind if I search your car? |
| Defendant: | It is my wife's car |
| Officer: | Yes or no? |
| Defendant: | Go right ahead. |
| Officer: | Can I search? |
| Defendant: | Go right ahead. |

[Gov. Exhibit 1 at 09:23-11:09].  There are no statements, or implications for that matter, of any coercive police procedures.  Officer Smith made no threats to Defendant, nor was any trickery or deceit used.  This factor weighs in favor of finding Defendant's consent was voluntary.  *See United States v. Pickett*, No. 3:20-cr-435, 2021 WL 4067486, at *14 (N.D. Tex. Aug. 19, 2021) (quoting *Tompkins*, 103 F.3d at 122), *report and recommendation adopted*, No. 3:20-cr-435, 2021 WL 4060451 (N.D. Tex. Sept. 7, 2021).

### *Voluntariness of Defendant's Custodial Status*

"A suspect's ability to end his encounter with law enforcement is the touchstone for assessing voluntariness."  *United States v. Medina*, 473 F. supp. 3d 720, 703 (W.D. Tex. July 20, 2020) (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 443 (5th Cir. 2003)).  "Voluntariness of custodial status turns on whether a reasonable person in the defendant's position would feel free to terminate the encounter."  *Soriano*, 976 F.3d at 455.[6]  "Whether an investigating officer has

---

[6] Importantly, the "in custody" analysis is different for alleged Fourth Amendment violations during a traffic stop compared to that under the Fifth Amendment for a custodial interrogation *Miranda* inquiry.  The bar for finding a

returned a defendant's license and documents and has provided the citation as promised are relevant to whether a reasonable person would feel free to terminate the encounter." *Id.* at 455-56 (citing *United States v. Cavitt*, 550 F.3d 430, 439 (5th Cir. 2008)). Officer Smith asked to see and was provided Defendant's identification card. Officer Smith, while still in possession of Defendant's identification, asked Defendant to exit the vehicle; Defendant complied. Officer Smith informed Defendant that he would issue him a citation. Thereafter, Officer Smith stood next to Defendant, with no weapons drawn and without raising his voice, asked him a few questions, including whether he would consent to search of the vehicle. Though Defendant was unrestrained, because Officer Smith had not yet returned Defendant's identification card or issued Defendant the promised citation at the time Defendant gave consent to the search, this factor weighs in favor of Defendant. *See Soriano*, 976 F.3d at 456 (finding factor weighed against voluntariness where the officer questioning defendant retained possession of registration during questioning and had not yet issued a citation); *Pickett*, 2021 WL 4067486, at *14 (citation omitted) ("Courts have found that a reasonable person would not feel free to terminate the encounter when an officer has not returned their identification or other relevant documents to them at the time of consent. Based on these circumstances, this factor weighs against a finding of voluntariness."); *see also United States v. Walker*, 706 F. App'x 152, 156-57 (5th Cir. 2017) (even though defendant was not handcuffed, the officer's "actions clearly indicated that [defendant] was not free to leave" where the officer

---

person "in custody" is lower in the context of a Fourth Amendment seizure. *United States v. Nelson*, 990 F.3d 947, 955 (5th Cir.), *cert. denied*, 211 L. Ed. 2d 297, 142 S. Ct. 490 (2021) ("The requisite restraint on freedom is greater than that required in the Fourth Amendment seizure context."). The threshold for being "in custody" during a traffic search is lower than that for custodial interrogation because, as the Supreme Court has explained:

> a person detained as a result of a traffic stop is not in *Miranda* custody because such detention does not "sufficiently impair [the detained person's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." As we later put it, the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody . . ."

*Howes v. Fields*, 565 U.S. 499, 510 (2012) (citation omitted).

had possession of defendant's car rental agreement, insurance verification, and co-defendant's driver's license); *United States v. Alexander*, 589 F. Supp. 2d 777, 788 (E.D. Tex. 2008) (finding factor weighed in favor of defendant where officer retained driver's license).

### Defendant's Cooperation

"Cooperation by the defendant is a factor favoring a finding that consent was voluntary." *Soriano*, 976 F.3d at 458 (citing *United States v. Yeagin*, 927 F.2d 798, 801 (5th Cir. 1991)); *see Alexander*, 589 F. Supp. 2d at 789 (finding this factor weighed in favor of finding of consent where defendant "was quite cooperative, obeyed his requests, and answered his questions."). Defendant was generally cooperative with Officer Smith. When prompted, he gave Officer Smith his identification card and allowed Officer Smith to retrieve the firearm from the backseat. He complied with Officer Smith's request to step out of the car. He answered all of Officer Smith's questions without hesitation and was not combative. When asked if Officer Smith could search his car, he answered definitively and affirmatively, "go right ahead." Defendant was "more cooperative than not." *See Pickett*, 2021 WL 4067486, at *15; *see also United States v. Labrador-Peraza*, 563 F. Supp. 3d 563, 577 (W.D. La. 2021) (finding factor weighed in favor of consent where the defendant "assented without questions or hesitation and told Agent Holland there was nothing in the vehicle."); *Ramirez*, 2019 WL 3502913, at *10-11 (finding this factor weighed in favor of voluntary consent where the defendant was "generally cooperative," "not disrespectful," "not combative," and "did not give [the officer] an attitude").

### Defendant's Awareness of His Right to Refuse

"The Fifth Circuit has emphasized that '[p]roof of knowledge of the right to refuse consent is not required to show voluntariness.'" *United States v. Martinez-Velazquez*, No. CR 19-157-JWD-EWD, 2021 WL 293315, at *15 (M.D. La. Jan. 28, 2021) (quoting *United States v. Sutton*,

850 F.2d 1083, 1085 (5th Cir. 1988)).  "An officer's failure to inform a suspect that he has a right to refuse consent to a search militates against voluntariness." *Pickett*, 2021 WL 4067486, at *15 (quoting *Soriano*, 976 F.3d at 457)).  However, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)); *Alexander*, 589 F. Supp. 2d at 789 ("Awareness [of the right to refuse], however, is not fatal to establishing that consent was voluntary.").  Most importantly, "experience in the criminal justice system can offset 'any weight' accorded to an officer's failure to advise a suspect of his right to resist a search." *United States v. Ponce*, 8 F.3d 989, 998 (5th Cir. 1993) (citing *United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988)).  The bodycam footage does not reflect that Officer Smith informed Defendant of his right to refuse.  Nonetheless, Defendant's contention that he agreed to the search in exchange for being issued a citation rather than being arrested suggests he knew that declining consent was an option.  Further, Defendant's criminal history in the record shows numerous arrests and convictions [Dkt. 11 at 5-9, Sealed].  *See Soriano*, 976 F.3d at 457 (looking to the defendant's presentence report to evaluate this factor).  "[B]ased on [Defendant's] prior convictions and consequent experience with law enforcement procedures, the [C]ourt believe[s] [Defendant] was familiar with his right to refuse consent."  *See Ponce*, 8 F.3d at 998.

### *Defendant's Education and Intelligence*

"[T]he Fifth Circuit has allowed to stand the conclusion that the government has met its burden on this factor when the defendant has presented no evidence that he is mentally deficient or was unable to exercise free will in consenting." *Pickett*, 2021 WL 4067486, at *16 (citing *United States v. Staggers*, 961 F.3d 745, 759 (5th Cir. 2020)).  At Hearing, neither the Government nor Defendant proffered evidence related to whether Defendant's education or intelligence

prevented him from providing knowing consent.  The record in this cause reflects Defendant attended college and has owned his own business [Dkt. 11 at 3, Sealed].  *See Ramirez*, 2019 WL 3502913, at *11 (finding this factor weighed in favor of finding consent voluntary where defendant had a high school diploma, was working toward a degree at a community college, and "appeared intelligent at the Suppression Hearing."); *United States v. Benavides*, No. SA-09-CR-903, 2010 WL 5373884, at *4 (W.D. Tex. Dec. 21, 2010) (holding that consent was voluntary when, among other factors, the defendant had a high school diploma).

### Defendant's Belief that No Incriminating Evidence Will Be Found

"Consent is more likely to be voluntary when the defendant did not know incriminating evidence would be found."  *Ramirez*, 2019 WL 3502913, at *11 (citing *Ponce*, 8 F.3d at 998). "Consequently, an awareness or belief that some incriminating evidence will be found weighs against a finding of voluntariness."  *Soriano*, 976 F.3d at 458.  This factor is neutral in the Court's analysis.  It is unclear from the record whether Defendant was aware that law enforcement would locate the narcotics behind the speaker box.  *See United States v. Zucco*, 860 F. Supp. 363, 368 (E.D. Tex. 1994) ("it is unclear whether Zucco believed that incriminating evidence would be found during the search. Perhaps he believed that the cocaine would not be found because it was so cleverly hidden."); *see also Soriano*, 976 F.3d at 458.

On balance, and after consideration of all relevant factors, the Court finds that Defendant's consent to search was valid and was never expressly revoked.

### The Search Did Not Exceed the Scope of Consent

Under the Fourth Amendment, "[t]he Supreme Court's standard for measuring the scope of a consent is one "of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  *United States v. Gallegos-*

*Espinal*, 970 F.3d 586, 591 (5th Cir. 2020) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991)). "The question is *not* to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003). "Where there is ambiguity regarding the scope of a consent, the defendant has the responsibility to affirmatively limit its scope." *Gallegos-Espinal*, 970 F.3d at 591 (quoting *United States v. Sarli*, 913 F.3d 491, 495 (5th Cir. 2019)). "A 'failure to object to the breadth of a search is properly considered an indication that the search was within the scope of the initial consent.'" *Esquivel Carrizales*, 2020 WL 6392420, at *15 (quoting *United States v. McSween*, 53 F.3d 684, 688 (5th Cir. 1995)) (cleaned up). "If a defendant fails to limit the scope of a search, 'the question that remains in determining its validity is whether, under the totality of circumstances, the search was reasonable.'" *Id*. (citing *United States v. Mendez*, 431 F.3d 472, 477 (9th Cir. 1994)).

Defendant contends that the officers exceeded the scope of consent after he was arrested, since he believed there was an "implied agreement negotiated," which was violated upon his arrest [Dkt. 70 at 1]. The Government rejoins that there was no such agreement, implied or otherwise, related to the scope of Defendant's consent. Again, where a defendant has given consent, that "[c]onsent may be 'limited, qualified or withdrawn' by the person who originally consented." *Esquivel Carrizales*, 2020 WL 6392420, at *15 (quoting *Mason*, 557 F.2d at 428). Here, Defendant "chose not to place any explicit limitations in his response to [the officer's] general request, which, in this Circuit, is evidence of general consent." *See Mendoza-Gonzalez*, 318 F.3d at 667 (quoting *United States v. Crain*, 33 F.3d 480, 484 (5th Cir. 1994)). Defendant's "failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent." *See id.* at 670. To the extent Defendant moves to suppress

evidence based on the scope of consent, his request should be denied because he did not qualify his general consent to search the vehicle. Further, to the extent Defendant claims that he did not consent to the inventory search by Officer Burr or that such search exceeds the scope of his consent, he points to no authority supporting such argument. As explained *supra*, an inventory search is a separate warrantless search exception. However, even if his consent or the scope thereof was relevant (which it is not), this Court would find Defendant's general consent for Officer Smith to search the vehicle extends to the search of the trunk by Officer Burr because, again, he did not limit or otherwise revoke his consent to search. *See id.* at 667 (citation omitted) ("Mendoza chose not to place any explicit limitations in his response to their general request, which, in this Circuit, is evidence of general consent.") (cleaned up); *United States v. Torrellas*, 197 F. App'x 318, 319 (5th Cir. 2006) (citing *Jimeno*, 500 U.S. at 251) ("Given that Torrellas consented to the search while the records check was being run, the fact that the officers did not inform him that the check was 'clean' before searching in no way vitiated his consent; there is nothing to suggest that his consent was in any way predicated on the records check, and the officers were justified by his consent to search the car. We reject Torrellas's assertion that his consent did not include the trunk or the speaker box located in the trunk. Torrellas's general consent to search the car for drugs justified searching wherever drugs might be concealed."). In sum, the Court finds consent was valid and the search did not exceed the scope of consent, but even if it did, the Court would still deny Defendant's request to suppress because the evidence seized was the result of a proper inventory search.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant Robert Leon Franklin, III's Motion to Suppress Evidence [Dkt. 58] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 20th day of January, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION – Page 22